# James Bamford *v.* Pittsburg and Birmingham Traction Company, Appellant.

*Street railways—Negligence—Burden of proof—Province of jury.*

In an action against a street railway company, by one not a passenger on its cars, to recover damages for personal injuries caused by the fall of one of the company's poles, upon which its wires were strung, no presumption of negligence arises from the mere happening of the accident, but plaintiff is bound affirmatively to prove negligence on the part of defendant, and the case is for the jury where one of the plaintiff's witnesses testifies, although contradicted by several of defendants' witnesses, that the accident was caused by a trolley pole catching in a loop of wire, thus pulling the street pole down upon the plaintiff.

*Negligence—Damages—Pain and suffering.*

In an accident case it is not improper to say to the jury that the plaintiff may recover such damages as will compensate him for his pain and suffering.

Argued Oct. 23, 1899. Appeal, No. 33, Oct. T., 1899, by defendant, from judgment of C. P. No. 2, Allegheny Co., July T., 1897, No. 753, on verdict for plaintiff. Before Sterrett, C. J., Green, McCollum, Mitchell, Dean, Fell and Brown, JJ. Affirmed.

Trespass for personal injuries. Before White, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

[The defendant company has not undertaken to explain how this accident could occur in any other way—by any witness, I mean; at least no witness that I remember giving testimony. It would be incumbent on the defendant company to remove this evidence of imperfect machinery, or negligence, by showing in some way how that accident could occur without any negligence on the part of the defendant company. I do not remember of any witness trying to explain it. It will not do for the jury to imagine something. You can only decide this case upon testimony. It will not do for you to imagine that it could have occurred in some other way.] [2]

[What the plaintiff is entitled to recover must be solely by

way of compensation: you cannot increase the damages by way of punishing the defendant company. You can only allow, by way of compensation to the plaintiff, what he has expended or may expend, for his loss of earning power, the pain that he may suffer,—purely compensation is the measure of damages in this case.] [4]

Plaintiff's second point and the answer thereto were as follows:

The defendant company was bound to use reasonable care in the construction and maintenance of its poles and wires along the highways; it must use reasonable care in selecting poles, wires, feeders and other apparatus used in the construction of its system for propelling cars over its tracks by electricity, and if improperly constructed, or constructed and put in place in a careless and faulty manner, which carelessness and faulty construction resulted in the injuries to plaintiff, without negligence upon his part, he is entitled to recover in this action such damages as will compensate him for his pain and suffering, amount expended by him for medicine, nurses and medical attendance and loss of time and earning power. *Answer:* Affirmed. [6]

Verdict and judgment for plaintiff for $7,657.75. Defendant appealed.

*Errors assigned* among others were (2, 4, 6) above instructions, quoting them.

*A. W. Duff*, with him *H. E. Carmack* and *John S. Robb*, for appellant.—There was evidence of negligence sufficient to submit the case to the jury.

The court erred in its instructions as to damages for pain and suffering: Goodhart v. R. R. Co., 177 Pa. 15.

*J. B. Chapman*, with him *J. W. Lee*, for appellee, cited on the question of damages: Baker v. Penna. Co., 142 Pa. 503; Kyle v. Southern Electric Light & Power Co., 174 Pa. 570; Smedley v. Ry. Co., 184 Pa. 620.

OPINION BY MR. JUSTICE DEAN, December 30, 1899:

The plaintiff Bamford was a man over seventy years of age serving as watchman at the Diamond National Bank of Pitts-

burg.  On October 24, 1896, when on his way home from work, at a point where the tracks of the defendant company cross Fifth avenue and Smithfield street, he was seriously injured by a pole, on which was suspended the railway wires, falling upon him.  There was much flatly contradictory evidence as to the cause of the accident; one view of it, that of plaintiff, tended to show that a loop of wire which had become useless, but which at one time had been serviceable, was permitted to hang down at a point where the trolley line on Smithfield street passed under the span wire, at the building line of Fifth avenue between the poles at the corners of the two streets. The trolley left the trolley wire immediately before it reached the span wire between these two poles, and caught in this loop, which held the wheel against the span wire, and thus pulled down the pole upon the plaintiff.  This condition of the loop wire was positively denied by defendant.

The plaintiff, averring negligence on part of defendant, in leaving a useless and abandoned wire remain in that condition, brought suit.  At the trial in the court below, it was earnestly contended by defendant that there was no evidence on part of plaintiff which justified the submission of that question to the jury, and that the court should peremptorily instruct for defendant.  There was a verdict for plaintiff, and defendant appeals, assigning for error the refusal to instruct that there was no evidence of negligence on which to base a verdict.  It is true, the plaintiff not being a passenger the burden was on him to prove negligence or such a state of facts as fairly warranted the inference.  If his proof had gone no further than to show a positive injury from the fall of the trolley pole, the case should not have been submitted, for the fall of the pole might have been the result of many causes not attributable to the negligence of the company, and therefore it would not have been bound to prove a negative.  But there was positive affirmative testimony on the part of at least one witness, W. C. Hagan, called by plaintiff, who thus testified :

"I noticed the trolley pole fly off the trolley wire ; it struck what is known as a span wire, along about a third way from the tip of the trolley pole or trolley wheel.  It struck a span wire, and when it rebounded it caught in a loop.  There was a loop and feed wire coming—well, the feed wire was run along the

span wire to feed the trolley wire, and there was a loop of possibly, oh, it was anywhere from eight to ten or maybe twelve inches from what is known as the span wire insulator. That pole struck it in this way, and the momentum of the car turned it in this shape and just pulled the span and feed wire along. The car was possibly half way across Fifth avenue when the pole next the Pennsylvania railroad ticket office fell. I saw it fall on the man. I can remember of him trying to step back and throwing up his hand in this way, trying to step back to the pavement. He was out possibly a foot or two from the pavement on the crossing."

Then, in answer to questions, he further testified he had noticed that loop, the useless one, a month before, and had noticed it there at the time of the accident. It is true that Mr. McCoy, superintendent, and several of the employees of the company positively testified that, although the loop had once been there, it was not there that morning. But, although the testimony was so gravely contradictory, it did not follow, the jury must have guessed at the cause of the accident, and found negligence of the company without sufficient evidence. The case apparently turned on a question of credibility, with the affirmative testimony of Hagan on one side and the denial of it by a number of witnesses on the other. Hagan was not a dull or unveracious witness; he was manager of a newspaper and active in public affairs. If the jury believed Hagan, which they undoubtedly did, the inference of negligence was fairly warranted, and we cannot see how the court could have withdrawn the case from the jury.

There is no merit in the second assignment, which alleges error in the instruction as to the measure of damages. The distinction between the rule laid down in Goodhart v. R. R. Co., 177 Pa. 15, and the one claimed here, is without a difference; it was not suggested that pain and suffering had a positive price or market value, but that an allowance might be made in damages for pain and suffering, by way of compensation.

The assignments of error are overruled and the judgment is affirmed.